UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL RABBITT, et al. | No. 25 CR 693<br><br>Judge April M. Perry |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANTS' MOTION FOR ORDERS OF PRESERVATION**

The United States of America, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, hereby responds to Defendants' Motion for A Preservation Order (Docket No. 63) as follows:

1. Defendants have filed a motion seeking two orders of preservation: (1) an order requiring the United States Department of Homeland Security (DHS) to preserve and maintain materials related to the incident out of which the charges in this case arise; and (2) an order requiring the Broadview Police Department to preserve and maintain materials related to the incident out of which the charges in this case arise.

2. The indictment in this case charges defendants with conspiracy to prevent by force, intimidation, and threat a United States law enforcement officer from discharging the duties of his office, and to injure him in his person or property on account of his lawful discharge of the duties of his office, and while engaged in the lawful discharge thereof, and to injure his property so as to interrupt, hinder, and impede him in the discharge of his official duties, in violation of Title 18, United States Code, Section 372 (Count 1), and for forcibly impeding, intimidating, and

interfering with an officer of the United States while engaged in or on account of the performance of his official duties, in violation of Title 18, United States Code, Sections 111(a)(1) and 2 (Counts 2 -7).

The charges here arose out of an incident on September 26, 2025, at approximately 7:45 a.m., in which defendants and others swarmed a car driven by an Immigration and Customs Enforcement (ICE) supervisor, and attempted to prevent the car from reaching a facility operated by ICE ("the Broadview facility"). The incident was captured on video, as were actions preceding the incident. The videos show that earlier on the morning of the incident, at least some of the defendants began walking back and forth across the opening of a large commercial driveway opening to the Broadview facility, as well as other businesses. There was no designated crosswalk there. The public sidewalk ends at or before the south end of that large commercial driveway, and there is no sidewalk on the north end of that driveway. *See* aerial photo, attached as Exhibit A.

3.     Videos show that as cars turned into the driveway, some demonstrators, including some defendants, attempted to walk in front of the cars and prevent them from proceeding. Each time, Broadview police had to walk toward the demonstrators and direct them to "make a hole" to allow cars to proceed. Even then, some demonstrators continued to walk in front of cautiously moving cars until officers repeated orders to let the cars through. For instance, on at least one occasion after demonstrators appeared to move and a car was proceeding cautiously, one defendant

2

walked directly in front of the moving car, and exclaimed in mock fashion words to the effect of, "Oh, I was just crossing the street!" Repeatedly, Broadview police had to ensure vehicle entry.

    4.    At some point, it appears that the few Broadview police officers on the scene were not in the driveway when the ICE supervisor turned in, and were unable to stop the demonstrators from impeding the car.

    5.    The videos show that demonstrators, including defendants, quickly swarmed the car, some of them moving from the sides to the front of the car, at one point yelling to each other to move from the sides to the front of the car, to more effectively impede it. One defendant can be seen on the video rushing from a short distance away to the front of the car, where he whipped the drink in his hand at the windshield of the car and then proceeded to plant his hands on the hood, lean his body into the front of the car and backward step in an effort to impede the car. There was room behind and to the sides of the demonstrators to move out of the way as the ICE supervisor's car crawled forward, but they did not do so, instead chanting statements like "F**k this Pig" while banging on, holding on, and standing in front of the car. At no time were any demonstrators pinned to where they could not move away. The ICE supervisor inched the car slowly down the driveway, until he got close to the facility; at that point, other agents came out with pepper spray and dispersed the crowd. At some point during the incident, demonstrators broke a side mirror and a back windshield wiper from the car, banged on and scratched the car, and etched

3

the word "Pig" into the side of the car. Fortunately, due to the ICE supervisor maintaining a cool head and continuing at an extremely slow and cautious pace, nobody was hurt.

6. The government provided the first wave of discovery at arraignment, which included videos of the incident. Shortly thereafter, the government spoke with a defense counsel, who explained why he believed that videos from earlier that morning were material to the defense. Although Broadview Police Department is not part of the prosecution team, the FBI and the USAO contacted the Broadview Police Department to obtain a copy of their videos from that morning. The Broadview Police Department is a small law enforcement department, and they appeared unsure of which videos to pull. Therefore, the FBI agent and both prosecutors arranged to, and did, go to the Broadview Police Department, where they reviewed the body camera and in-camera car footage from the morning of September 26, 2025, and requested copies of video that depicted the demonstrators or the car. Some videos were not requested because they were not material, such as in-car camera footage from a car facing in a different direction. Others were of entirely separate incidents to which the Broadview Police Department had responded to that day. The government then explained to defense counsel what it had marked and that it expected to obtain and produce a copy of such video in discovery. Defense counsel must have misunderstood when they told the court that the government marked for copying only those videos "that the government believed to be relevant;" the government marked all videos that

4

show the demonstrators or the car that morning, regardless of whether the government believes all those videos are relevant at trial.

7. In addition, defense counsel requested that the government preserve and review the agent's communications on September 26, 2025, after the incident. The government did so and recently obtained the agent's texts and emails, and is currently reviewing those communications. The government expects to produce at least one communication, and seeks to submit any communications it does not produce to the court for *in camera* review for the court to determine if such communications should be produced. The government expects to complete that process within a week.

8. The government does not object to an order of preservation to either DHS or Broadview Police Department. Neither of those law enforcement agencies are part of the prosecution team, but the undersigned prosecutors are willing to pass those orders to their contacts in the respective agencies to make them aware.

9. The preservation orders submitted by defense counsel are vague and may lead to confusion. The government submits proposed preservation orders, used in the past, are more specific, attached hereto as Exhibits B and C.

WHEREFORE, the government respectfully moves this Court to enter the proposed preservations orders attached hereto.

                        Respectfully submitted,

                        ANDREW S. BOUTROS
                        United States Attorney

By:   /s/ *Sheri H. Mecklenburg*
        SHERI H. MECKLENBURG
        MATTHEW SKIBA
        Assistants U.S. Attorney
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300