1

```
              IN THE UNITED STATES DISTRICT COURT.
                NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

UNITED STATES OF AMERICA        )  Case No. 25 CR 693
                                )
          v.                    )
                                )
                                )
MICHAEL RABBITT,                )
KATHERINE MARIE ABUGHAZALEH,    )
ANDRE MARTIN, CATHERINE         )
SHARP, BRIAN STRAW, and         )  Chicago, Illinois
JOSELYN WALSH                   )  February 28, 2026
               Defendants.      )  12:00 p.m.


             TRANSCRIPT OF PROCEEDINGS - HEARING
             BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

For the Government:    HON. ANDREW S. BOUTROS
                       UNITED STATES ATTORNEY
                       BY:  MS. WILLIAM HOGAN
                            MR. MATTHEW D. SKIBA
                            MR. ANDRES ALMENDAREZ
                       219 S. Dearborn Street, Suite 500
                       Chicago, Illinois 60604

For Defendant
Michael Rabbitt:       TAFT STETTINIUS & HOLLISTER, LLP
                       BY:  MS. NANCY L. DePODESTA
                       111 East Wacker, Suite 2600
                       Chicago, Illinois 60601

For Defendant
K. M. Abughazaleh:     LAW OFFICE OF JOSHUA G. HERMAN
                       BY:  MR. JOSHUA G. HERMAN
                       53 West Jackson Boulevard, Suite 404
                       Chicago, Illinois 60604


For Defendant
Andre Martin:          COTSIRILOS, POULOS & CAMPBELL, LTD.
                       BY:  MR. TERRENCE H. CAMPBELL
                       55 East Monroe Street, Suite 3250
                       Chicago, Illinois 60603
```

APPEARANCES (Cont'd):

For Defendant
Catherine Sharp:            LAW OFFICE OF MOLLY ARMOUR
                           BY:  MS. MOLLY ARMOUR (via telephone)
                               MR. MICHAEL PODGURSKI
                           53 West Jackson Boulevard, Suite 1424
                           Chicago, Illinois 60604

For Defendant
Brian Shaw:                CHERONIS & PARENTE
                           BY:  MR. CHRISTOPHER PARENTE
                           140 South Dearborn Street, Suite 404
                           Chicago, Illinois 60603

For Defendant
Joselyn Walsh:             PEOPLE'S LAW OFFICE
                           BY:  MR. BRAD THOMSON
                               MS. TAYLEECE PAUL
                           1180 North Milwaukee Avenue, Third Floor
                           Chicago, Illinois 60642

Court Reporter:            Noreen E. Resendez, CSR, RPR, CRR
                           Official Court Reporter
                           219 S. Dearborn Street, Room 1728
                           Chicago, Illinois 60604
                           312-582-5267
                           Noreen_Resendez@Ilnd.uscourts.gov

                        *   *   *   *   *

                PROCEEDINGS REPORTED BY STENOTYPE
      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court; in part via telephone:)

THE CLERK: Calling case 25 CR 693, USA vs. Rabbitt et al.

MR. HOGAN: Good morning, Your Honor. William Hogan, Matthew Skiba, and Andres Almendarez on behalf of the United States.

THE COURT: Good afternoon.

MR. HERMAN: Good afternoon. Josh Herman on behalf of Katherine Abughazaleh, who is present.

MR. POULOS: Good afternoon. Ted Poulos and Terry Campbell on behalf of Andre Martin, present in court.

MR. PARENTE: Chris Parente for Brian Straw, who is behind me.

MS. DePODESTA: Nancy DePodesta on behalf of Michael Rabbitt, who is here.

MR. PODGURSKI: Michael Podgurski on behalf of Katherine Sharp, who is present before you.

MR. THOMSON: And Brent Thomson on behalf of Jocelyn Walsh, present in court.

THE COURT: All right. Good to see everybody. We are up today for the oral ruling on the motion for Bill of Particulars. I had just a couple questions for the government. Based on your response, I want to make sure that I understand everything that's in your response clearly, and then I also had a couple questions for the defense side. So pick a

representative, everybody.

With respect to the government, I understood your response as indicating that the conspiracy in your opinion is very narrowly focused on September 26th; is that accurate?

MR. SKIBA: Your Honor, if I can just confer with my team briefly.

THE COURT: Sure.

MR. HOGAN: Just as a prelude perhaps, maybe I can save a little time. The answer to your question is yes. And we had a brief meeting with defense counsel, all defense counsel, before we came in this morning; and we advised them that we are going to voluntarily redact a portion of the charge that's charged in three separate fashions. It's largely the subject of Mr. Herman's motion or the defense counsels' motion. It's really kind of a multiple conspiracy argument, I think.

THE COURT: Right.

MR. HOGAN: And we are going to voluntarily seek to amend and file a -- like a notice of intent to produce by proof to strike the second clause. The one that --

THE COURT: The injure clause?

MR. HOGAN: Yes.

THE COURT: Okay.

MR. HOGAN: And we would ask for a week to do that. We just started really conferring on it. Mr. Almendarez and I, as the Court is aware, are brand new to the case and we are

still getting up to speed. We'd like to talk to our supervisors downstairs, including the U.S. Attorney. We had a chance to do that briefly this morning. We'd like a little bit more time to do that before we file our pleading, and we would ask for a week to do that.

I also understand that there are some additional videos that the defense might have for us to review that we would like to take into consideration while we prepare that pleading as well.

With that, because Mr. Skiba has been the laboring oar on the motions, I'm going to defer to him for your other questions.

THE COURT: Okay. So as I understand it, we've got three subsections of 372. The first is by force, intimidation, and threat preventing Agent A from discharging duties of office. The second is injuring him and his personal property and some other language. Third is injuring his property so as to interrupt, hinder, and impede him in the discharge of his duties. You are going to file something within one week, making it clear that at the very least you don't plan to proceed on the second clause.

MR. HOGAN: That's correct.

THE COURT: And you're perhaps still discussing whether either of the other two are going to fall out?

MR. HOGAN: We are going to discuss that. I think

that it's highly unlikely that the first one will fall out, but we are going to take a look at everything.

THE COURT: Okay. That is helpful. To the extent you plan to proceed at this point on the other two, would you be proceeding on the other two with respect to all of the defendants or is there some chance you will be arguing for some of them on one and for some of them on three?

MR. HOGAN: I think the latter but I don't want to be tied down to that because we're still reviewing evidence, and it's my understanding that there's additional evidence that we have not seen and the defendants might want to have us consider in that regard.

THE COURT: Okay. Well, I'm not going to force you to go to trial on something that you don't think is supported by the evidence.

MR. HOGAN: We don't want to do that.

THE COURT: How long do you think it will take you to make that determination?

MR. HOGAN: I don't know for sure. It's an evolving process. There's still evidence that's being unearthed apparently. So I don't want to be tied down to that, but certainly long enough before trial that nobody is going to be surprised by it.

THE COURT: Okay. Let's table that for a second and come back to it.

Resuming the first question, at this point, you understand all of your evidence is going to be focused on September 26th?

MR. HOGAN: Yes.

THE COURT: Nothing before and nothing after?

MR. SKIBA: Correct.

THE COURT: Okay. And I read from your response -- tell me if this is wrong, that the coconspirators at this point that you have evidence of are the people who were present on September 26th?

MR. SKIBA: At this point, yes, that's correct.

THE COURT: You have no evidence of any coconspirators who are not there near the intersection?

MR. SKIBA: Correct, Your Honor.

THE COURT: I understood also you to be telling me that the indictment is focused on the defendants' actions with respect to Agent A as he's driving down the street and into the driveway, which is to say that you are not arguing any of these other subsections with respect to what is happening at the protest on a wider level, either before he shows up on the scene or after. Does that seem fair?

MR. SKIBA: That's correct, Your Honor.

THE COURT: I also read that your theory of the case is based on a tacit or implicit agreement as opposed to implicit?

THE GOVERNMENT: We cite case law that a spontaneous conspiracy is indeed a conspiracy.

THE COURT: You don't have and you're not going to present explicit agreements among anyone it sounds like?

MR. SKIBA: We don't have evidence of that to date and doubt that is forthcoming.

THE COURT: To the extent you have communications between and among the defendants, have you turned it over?

MR. SKIBA: We have turned over everything to date as it relates to the videos at Broadview. The only things we haven't turned over at this point we consider Jencks material for Agent A.

THE COURT: So to the extent there were any threats made out loud, have you turned those over?

MR. SKIBA: We have, Your Honor.

THE COURT: And are there specific statements made by any of the defendants that you are planning to argue are true threats?

MR. SKIBA: I think that's a part of what we are now evaluating as a team as we consider narrowing our proof and exactly how we are narrowing our proof.

THE COURT: Because you understand they would -- there would be some pretty significant first amendment briefing on that if there were things being said out loud that you are going to be arguing are true threats, right?

MR. SKIBA:  Correct.

THE COURT:  Are you anticipating filing a Santiago proffer?

MR. HOGAN:  Could you repeat that?

THE COURT:  Will you be filing a Santiago proffer?

MR. HOGAN:  I don't think so.

THE COURT:  Okay.

MR. SKIBA:  As Mr. Hogan alluded to before, the defense has videos that they intend to present to us.  I don't know what's in those videos, but that may change our position on that.

THE COURT:  Okay.  It sounds like to me at least at this point you will be arguing the defendants are guilty based upon their actions, not their words; is that fair?

MR. HOGAN:  That's fair, absolutely.

MR. SKIBA:  If I can give this caveat, one of the elements of, I think, both 372 and Section 111 is that this was done because Agent A was an ICE officer.  So there are words in the discovery that was produced that show that either the defendants themselves or their coconspirators knew that he was an ICE officer.  I think with that caveat.

THE COURT:  That's fair.  To the extent you have any evidence of advanced planning amongst the defendants, have you turned that over?

MR. SKIBA:  We have, Your Honor.  At this point we

don't have any evidence of advanced planning.

THE COURT: Okay. All right. A few questions for the defendants. Who is your representative?

MR. HERMAN: (Indicating.)

THE COURT: Lucky you. Let's talk about double jeopardy, all right. As I understand it, it can appear in three different ways: A person who is acquitted can't be prosecuted again, a person who is convicted cannot be prosecuted again, or a person cannot be punished twice for the same offense. So to the extent that you have double jeopardy concerns, I assume we are working under prong three, being twice convicted for the same offense.

MR. HERMAN: I think that's fair, Judge.

THE COURT: Okay.

MR. HERMAN: And there's also -- we didn't really squarely address it in the reply. I think there's interplay between -- we need to see what the proof would be like for the conspiracy, and I understand under *Blockburger* there's an additional element to the conspiracy that there's not in the 111, but that was one of our concerns as well, is how those interplay.

So it's the two separate, being effectively -- and I don't know if you would call this -- I always get them mixed up, duplicity issue, splitting up a charge into two different things. Where -- especially giving the tenuous nature of a

spontaneous agreement, if it's proven through actions and those same actions are the ones that are the proof of the misdemeanor 111 charge, I think that also raises some issues that we wanted to tee up as a concern for the need to clarify and specify what the agreement -- which one of the three agreements we're defending against.

THE COURT: So would the argument be perhaps that 111 is a lesser included offense of the 372?

MR. HERMAN: That the same proof would be used to prove each of them, and I guess you could say it's a lesser included. Again, none of us are conceding that there was any agreement at any time, but we're effectively defending the same charge -- the same act that's charged in two different ways.

THE COURT: So if that is true and if that is either a multiplicity or duplicity or lesser-included problem, how will a Bill of Particulars fix it?

MR. HERMAN: If we have, for instance, the government focusing on simply one, which is to prevent by force, threat, or intimidation, one could possibly argue that that is separate enough from the 111. If the government is proceeding on prong 3 or 2, as it seems like they're walking away from, the same -- I think, it's easier to see that the same act of banging on the hood or bracing yourself against the hood, if that's their theory about injury and force -- because, again, the 111 requires force, it would effectively be the same charge

split up in two different -- the same act supporting the charge -- two charges, two different offenses.

So that's why we wanted them to clarify specifically if they're proceeding on prong 1, 2, or 3 or if it's all of them. I mean some people, you know, may want to take, for instance, a necessity defense. If the car is turning into you as you're standing in a designated area, one of the natural reactions is to put your hands on the car and try to make it stop, right?

Now, the government may say that is force and it may say that is also the act that reflects the agreement. Because right now I think we've heard also that there is no evidence of a preexisting agreement between the parties. So we're dealing with this spontaneous conspiracy that is manifested through the same acts that somebody may say I was entitled to do as a matter of self defense from a car that is turning into me.

So the interplay between the charges -- and I don't know if I'm straying from the initial question about which of the -- what's our double jeopardy theory, it's more of an overarching concern between the interplay between the two separate offenses.

MR. HOGAN: I think that's more of an elements issue. You know, the manner and means of force, intimidation, and threats is not an element itself -- I mean, it's an aspect of the proof; but the crime is the prevention of the discharge of

the duties. I don't think that there's a double jeopardy issue there at all.

THE COURT: Well, there's not going to be a double jeopardy issue in that it doesn't exist until they get punished twice for the same offense, right? It seems to me, although we have some other things to sort out with respect to advanced notice, that the double jeopardy problems can be solved either by a special verdict form, so that we know what has been convicted on and/or only one conviction or sentence coming out of any trial. Do you think that's wrong? Or do you disagree on the edges?

MR. HERMAN: I'm not sure a special verdict form would assist as opposed to the government narrowing when this conspiracy began or ended.

THE COURT: I think they just did.

MR. HERMAN: No. They said the day. We're talking -- and I understand and oral responses to the Court is not a technical Bill of Particulars that will bind -- the point of a Bill of Particulars is that the government is binding itself to what it will prove at trial. And we would want -- it seems like the government is willing to do it, to specify that this conspiracy was cabined on this day, and that in our perspective that is still not enough. I mean, we hear the government. We met before court. We have an understanding that there's going to be a narrowing, so I'm just flagging that just narrowing it

to that day, doesn't address the concerns that we spelled out here.  Particularly insofar as these First Amendment issues.  And we take issue with just prosecuted for their acts and not words.  It's well-settled that actions can also be expressive conduct.  Walking back and forth in the intersection here in a designated area where the Broadview police officers told them to be, you read the government's response and that looks like hindering and impeding because people had to slow down coming in there, and you would think that that's the crime when it's actually not a crime.  So we would be able to still articulate that that type of activity is protected First Amendment activity as opposed to an overt act of conspiracy.

Now, I hear the government saying, we're not focusing on the before or after; but it's all part of the overall narrative about what was happening at Broadview at that intersection beginning in the early morning hours, as shown in the body camera video that we put forth in our motion.

So, you know, our double jeopardy concerns are about whether or not, again, there are multiple conspiracies, conspiracies for different prongs that happened at different times.  Because again, prong 3 is where this hindering language comes in as an object of an agreement that is coupled with an agreement to injure.

The first prong is to prevent by force, threat, or intimidation somebody from carrying out his duties.  Very

different things.  So that may help separate what type of conspiracy agreement that we're defending against, but I don't think it answers the overarching question which is when did exactly begin and when it ended.  Is it a spontaneous conspiracy.  Did it begin when people started filtering in when they were walking around?  Because spontaneous conspiracy in a case like this is -- you have to kind of turn your mind into a knot to understand it and maybe that's where we're at.

THE COURT:  All right.  So the defendants have asked in this case for a Bill of Particulars, which is a request that is contemplated by Federal Rule of Criminal Procedure 7(f); 7(f) does not tell us what circumstances the Bill of Particulars is appropriate.  The Seventh Circuit has made it pretty clear though that the key question is whether a defendant is apprised of the charges against him or her in order to adequately prepare for trial.

They have also said that a Bill of Particulars is unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges for the defendants.  According to the Seventh Circuit, sufficient notice means the indictment includes three things: The elements of the charged offense, the time and place of the alleged criminal conduct, and a citation to the statutes violated.

Even if the indictment doesn't include this

information, a Bill of Particulars is unnecessary if the information is available through some other means like discovery.

The Seventh Circuit has also been quite clear that the Constitution does not require the government to reveal the details of how it plans to prove its case. Here the indictment does set forth the elements of the offense, the time and place of the alleged criminal conduct, and a citation to the statutes violated.

Additionally, at least at this point, I understand the government to be telling all of us that its case will be focused on the events of September 26, 2025; that it has tendered all of the statements in its possession of the defendants, including any threats and all communications of which it is aware between the defendants and other coconspirators. The government has told us they have at this time no evidence of advanced planning.

So all of this is to say, I don't think you've actually met the standard for a Bill of Particulars, but we've gotten you quite a bit of the way there. You asked for the conspiracy begin and end date. The government has clarified it is September 26th and September 26th. They have also said they consider this to be a spontaneous conspiracy.

You've asked for all of the threats. They have said they've given them to you. They said at this time they are not

necessarily aware of any, and that they will let you know if at any point they plan to proceed on any true threats. I expect that they will abide by that, and I will set a date before we all go today where that will be tendered by.

You have asked for what clause of 372 has been violated for each and every one of the defendants. I understand the government to be saying that they are still working on that and that they will let you know for each of your defendants which clause or clauses they plan to proceed under, and we'll go ahead and set a date for that to happen by as well.

In terms of the persons who the defendants conspired with, I understand the government to have told us today that it is no more than the people who are present at the protest. I understand you want a further level of detail about who specifically at the protest was a coconspirator. I have not found any case law that would suggest that the defendants are entitled to that information under the law, and that's largely because of the case law that says they don't have to tell you how they plan to prove their case specifically.

The only two other things that you asked for are all objects of the conspiracy and all acts undertaken in furtherance of the conspiracy. Objects of the conspiracy isn't actually a legal phrase or definition, so I'm not entirely sure I understand what you to mean. Presumably the object of the

conspiracy is that which has been set forth in the indictment to obstruct, impede, harm, et cetera, Agent A. I don't anticipate that they will argue any objects of the conspiracy outside of the words in the indictment and the words of the statute.

In terms of acts undertaken in furtherance, you all didn't provide any legal citations indicating that you're entitled to that with a Bill of Particulars. I didn't find any cases indicating that that is properly part of a Bill of Particulars. I did find three cases, all from the 1970s, saying the opposite. So we have the *United States v. Giese*, which is a Ninth Circuit case, 597 F.2d 1170; *United States vs. Murray*, 527 F.2d 401, First Circuit case; and *United States vs. Carroll*, 510 F.2d 507, that's a Second Circuit case. And in all of those, they said that a Bill of Particulars is not required for acts undertaken in furtherance of the conspiracy.

This is not a complex case. It involves events that took place over a very short period of time, which were video recorded from multiple angles. The defendants have gotten extensive discovery and it sounds like they are also providing to the government extensive discovery. I don't think your problem really here is that the indictment is unclear, it's that you fundamentally do not believe that the evidence supports a charge or a conviction. To the extent the defendants are correct, a Bill of Particulars is not going to

solve that problem, a jury will.

So all of the arguments that the defendants made in their brief that there was no conspiracy, even if there was, the individual defendants didn't join it for various factual reasons, those are arguments you can, should, and I presume will make at trial; but having a Bill of Particulars isn't going to aid you on that quest.

So the things that sounds like you all are still considering, first, the government is analyzing, as it should, whether the evidence supports the charges and if so which one of the two remaining subsections of 372; second, whether there are true threats such that we would need to do pretrial briefing on the First Amendment implications. I understand your point that actions can also be First Amendment conduct. I think, though, you can proceed based on all the video evidence if you are worried that they are proceeding based on a theory that merely being there is the crime, I suggest you talk with them about that, and then we can talk about it as we get a little bit closer to trial.

So let me turn it over to the government. How long -- I know you said you didn't really know. When do you anticipate you would be able to drill down more for the defendants to have a better understanding of what each of their cases will look like at trial?

MR. SKIBA: A month.

THE COURT: All right. So that would be the end of March. I'm going to ask you all to continue to meet and confer. I'm going to set a status date for that week of March 30th, and you all tell me if you have not gotten what you need or if there are any other problems in the meet and confers that have been happening that you think I need to weigh in on.

So we're looking at the 31st, April 1st, or April 2nd. Someone throw something out at 10:30 that makes sense.

MS. DePODESTA: 31st.

THE COURT: 31st at 10:30?

MR. HOGAN: That's fine with me.

MR. SKIBA: 31st at 10:30, you said?

MR. HOGAN: April 31st?

THE COURT: March 31st.

MR. SKIBA: That would work for me, Your Honor.

THE COURT: I am looking for anyone to raise a hand if they have an issue.

MR. HERMAN: I have an issue but I will arrange for it. I'm in trial before Judge Kennelly, but I'll sort it out.

THE COURT: Okay. Is there anything else we should be talking about today?

MR. CAMPBELL: I understood Mr. Skiba to say that there are statements that they may potentially offer as coconspirator statements. So can we set a date for a Santiago proffer from the government?

THE COURT: I understood him to say he's not so sure yet.

MR. CAMPBELL: So that's what's causing me heartburn. Is he is saying there are statements we might offer, we have not made a decision yet. We are coming up on the trial date, and if they're planning to offer them, we need time to brief it so that the Court can make a decision about whether that's stuff that comes in preliminarily or not. They need to make a decision.

THE COURT: Well, it's still 90 days before trial. We never get a Santiago proffer 90 days before trial.

MR. CAMPBELL: That's why I was just asking to set a date for it.

MR. HOGAN: I can say this, there's nothing that we know of that exists that is not on video, so ...

THE COURT: Well, that doesn't really help me. Because we have got to make -- if you're going to be offering them as coconspirator --

MR. HOGAN: I understand. But to Mr. Campbell's point, there's nothing lurking out there that they don't know about already. At least they can hear it on video.

THE COURT: Well, they don't know what you're going to be offering as a statement in furtherance of conspiracy. So I'm going to put this on your to-do list for a 30-day status if there are any, because I understood you to be telling me you

didn't think so at this point.

MR. SKIBA: Right. Just to clarify, I was only referring to the videos that the defense has and they have not produced to us yet. As I understand it, they have videos that we have not seen. So that's why I kept it open-ended.

THE COURT: So at this moment on your videos, there are no statements in furtherance of the conspiracy that you're planning to offer?

MR. HOGAN: We'll let you know by the 30th, Your Honor. How is that?

THE COURT: That works. So the 31st you all will have met and conferred about 372 subsections, true threats, statements in furtherance of the conspiracy. Hopefully you'll have resolved any concerns that the defendants have about those issues. If you have not and we need more dates or briefing, let me know and we'll talk about it then. Sound like a plan?

MR. HOGAN: That's fine with us.

THE COURT: Have I already excluded time through the trial date?

MR. HOGAN: You have.

THE COURT: Anything else?

MR. CAMPBELL: Thanks, Judge.

THE COURT: Thank you all.

(Concluded at 12:33 p.m.)

                              *   *   *   *   *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


*/s/Noreen E. Resendez*                    *February 28, 2026*
Noreen E. Resendez                         Date
Official Court Reporter