**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 CR 693 |
| | ) | |
| MICHAEL RABBITT, | ) | Judge April M. Perry |
| KATHERINE MARIE ABUGHAZALEH, | ) | |
| ANDRE MARTIN, BRIAN STRAW, and | ) | |
| CATHERINE SHARP | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTIONS FOR ATTORNEYS'
FEES AND EXPENSES AND LEAVE TO CONDUCT DISCOVERY**

**I.      A Promise to Pay a Non-Specified Amount of Attorneys' Fees Does Not Moot the Need
for Discovery.**

In responding to Defendants' motions for fees under the Hyde Amendment (Dkt. 201) and

to conduct discovery in support of that Hyde Amendment claim (Dkt. 206), the government

essentially asserts because it has agreed to pay Defendants *something* they are entitled to discovery

about *nothing* to further justify the *amount* of  fees they are entitled to recover. Dkt. 238. That

untenable response should be seen for what it is: yet another attempt to circle the wagons and

conceal critical information that is relevant to the proceedings in this case, including of specific

relevance to the amount of fees and costs Defendants are entitled to recover under their Hyde

Amendment petition. As discussed below, the Hyde Amendment petition itself may be held in

abeyance, as Defendants initially requested (*see* Dkt. 201, p. 24), but only to permit the

negotiations that the government has committed to, and only so long as discovery is produced so

the parties can meaningfully engage in those negotiations.

1

The Court should order the government to produce the information called for in Defendants' discovery requests (Dkt. 206) notwithstanding its agreement that Defendants are entitled to recover an as yet unagreed amount of their attorney fees, as the discovery requested is directly relevant to support the amount of fees in this unique case, including under the "special factors" provision of the Hyde Amendment itself. *See also* Dkt. 225 (Defendants' Position on Discovery Following Dismissal and During Pendency of Their Hyde Amendment Motion). Such targeted discovery is particularly necessary given the government's ongoing denial of any wrongdoing as epitomized by the U.S. Attorney's decision to congratulate the "courageous" and "strong" prosecutors in this case and their fight for "the rule of law" just hours after the bombshell exposure of severe prosecutorial misconduct, the concealment of what occurred in the grand jury, and the dismissal with prejudice of all charges against Defendants.

The government argues in its Response to Defendants' Motion for Fees and Leave to Conduct Discovery that "[Defendants'] motion for fees (Dkt. 201) should be held in abeyance unless and until the *amount* can be agreed on." Dkt. 238, p. 1. The government further claims that because it has agreed that Defendants are entitled to legal fees and expenses that any request for discovery "is moot no matter the result of negotiations in light of the United States' concession for litigation purposes that it does not intend [sic] contest the defendants' entitlement to fees." Dkt. 238, p. 1. This is not so.

Indeed, as to the motion for discovery, the very information sought is critical for reasons already stated in Defendants' Motion for Leave to Conduct Discovery (Dkt. 206), in order to establish the bad faith, vexatious, and/or frivolous nature of the government's failed prosecution and to ensure that Defendants have the information they require to effectively and fairly negotiate any potential resolution with the government, including full payment of fees, without an

evidentiary hearing. That is particulary so in the event that the government takes an unreasonable position on reimbursement of attorney fees that is tied to its belief that nothing truly uncommon or untoward was involved here – *e.g.*, that there are no "special factors," as contemplated by the relevant statute(s) when determining the hourly rate at which defense counsel should be compensated.

As previously reported, on June 5, 2026, just hours after Defendants filed their Motion for Discovery on their Hyde petition, the Chief of the Civil Division emailed Defendants' counsel and advised that the government was agreeing to pay Defendants' attorneys' fees and expenses, but in an amount or hourly rate yet to be determined. Defendants have since each submitted their respective fees and expenses[1], but in the now *more than two full weeks* since most all those bills were submitted to the government there have been no offers of payment made, no amount agreed upon, and no resolution reached between the parties on the amount of fees to be reimbursed. Given the lack of any resolution – or even any offer from, or discussion with the government about that topic – Defendants are entitled to the requested discovery, at a minimum, to support the amount of fees (*e.g.*, the hourly rate and totality of services for which compensation is due) to which they are entitled under the statute.

The government claims in its Response that "it's hard to imagine how such discovery would advance negotiations over the *amount* of fees when *entitlement* to fees is not an issue at all." Dkt. 238, p. 4. The government's position is ill-informed. As one example, to properly assess the amount of fees, the parties will need to agree upon the appropriate hourly rate to apply. The Equal

---

[1] The government received billing statements in a format agreed upon by the parties from four of the five defendants seeking fees and expenses on or about June 29, 2026. Each attorney had agreed to bill their respective client at a reduced hourly rate from their standard rate long before the Hyde Amendment reimbursement was at issue, and only fees calculated at those reduced rates are currently being requested from the government, though the special factors might well support rates closer to true market rates.

Access to Justice Act (EAJA) specifically provides that the compensable hourly rate for attorney's fees can be increased whenever a "special factor" present in the particular case "justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In this case, there are clearly several "special factors" present which warrant a higher hourly rate. Navigating the unusual intersection of a rarely used criminal conspiracy statute, a shifting government theory of liability, and highly involved First Amendment jurisprudence is an example of a special factor. Another "special factor" here was counsel's unusual work necessary to uncover the gross prosecutorial misconduct which occurred in obtaining the indictment in this case and overcoming the extensive efforts and misrepresentations directed at concealing what occurred. *See generally Shah Bros., Inc. v. United States*, 9 F. Supp. 3d 1402, 1410-11 (U.S. Ct. of Int'l Trade, 2014) (finding, in 2014 dollars, an hourly rate of $450 was appropriate given the expertise of the attorneys and the unique circumstances of the case); *In re Moulton*, 195 B.R. 954, 959 (M.D. Fla. 1996) (doubling the EAJA-calculated hourly rate because of the "special factors" present).

Here, and so they could be fully prepared to litigate and/or negotiate the *amount* of fees reimbursement to which they are entitled, Defendants made targeted discovery requests tailored to uncover potential further misconduct and additional misrepresentations, which Defendants have good reason to believe occurred – a belief further supported by the fact (recited above) that *within hours of Defendants filing their Motion for Discovery* which included requests for communications between anyone from the Chicago U.S. Attorney's Office and anyone from Main Justice (including Acting Attorney General Todd Blanche[2] and one of Blanche's chief deputies, Aakash Signh), the government immediately agreed it would pay Defendants' attorneys fees under the Hyde

---

[2] Acting Attorney General Blanche actively participated in the press release announcing the U.S. Attorney's return of the indictment in this matter, evidencing his personal involvement in this case at the outset, and there is good reason to believe his and his deputies' involvement continued throughout this highly political case.

4

Amendment. It seems clear from this timeline that this requested discovery (1) likely exists, and (2) would further expose the bad faith and vexatious nature of the litigation and add to the "special factors" the statute directs be considered, and thereby support the payment of the full amount of Defendants' billed legal fees and expenses.

While the government has committed to engage in good faith negotiations on this issue, good faith negotiations cannot occur unless both sides have the requisite factual information to meaningfully and fully engage in those negotiations. Indeed, true good faith negotiations cannot occur when the government refuses to provide information about the full scope of what occurred and the involvement of individuals outside of the United States Attorney's Office who played roles in the wrongful presentation and relentless pursuit of this case – including as to things that were misrepresented to the Court. And given the recent statements from the U.S. Attorney that transparency going forward is essential, and that he "fully supports" further investigations into the government's conduct in this case,[3] it would seem the government's position here in seeking desperately to avoid such transparency is at odds with publicly-stated directives.

In short, simply by agreeing that Defendants are entitled to recover fees of a non-specified amount, the government cannot roadblock Defendants from seeking discovery that is directly relevant to show additional "special factors" and therefore to support the amount of fees appropriately to be paid under the Hyde Amendment. For the foregoing reasons, Defendants, as originally requested, concur that the their Motion for Attorneys Fees and Expenses be held in abeyance for the time-being, *but only so as to allow for the production of discovery requested in*

---

[3] *See, e.g.,* Matt Masterson, *'Broadview Six' Seek Special Prosecutor to Investigate U.S. Attorney's Office Misconduct Allegations*, WTTW, June 17, 2026 https://news.wttw.com/2026/06/17/broadview-six-seek-special-prosecutor-investigate-us-attorney-s-office-misconduct (quoting U.S. Attorney Boutros); U.S. Attorney's Office for the Northern Dist. Of Ill., Press Release, May 27, 2026 (announcing "Sweeping Reforms to Internal Grand Jury Practices and Disclosures").

*Dkt. 206 to allow for fully informed negotiations*, and they further request that such discovery be promptly produced, as soon as within 14 days (whether to Defendants' counsel, or initially to the Court *in camera*) so there can be a full and informed resolution, if one can be reached without an evidentiary hearing.

## II. The Government's Promise to Pay Attorneys' Fees Should Not End This Court's Inquiry into the Misconduct That Occurred in this Prosecution.

> *"The light of day is the best disinfectant"*
> -Louis Brandeis

The overall tenor of the government's response deserves further comment. While Defendants appreciate the government's effort to begin to cure the financial damage they inflicted with their promise of Hyde payment, serious concerns remain about achieving full transparency about the bad faith and misconduct that occurred in this misguided prosecution. As part and parcel of developing the record for the Hyde petition, Defendants envisioned that an evidentiary hearing would be necessary. Dkt. 201, at 18, 22; Dkt. 206, at 4. For the reasons outlined above, discovery remains necessary—as does a public hearing. Without such neither Defendants, nor the Court, nor the public will have a full record and understanding of the bad faith, vexatious, and frivolous nature of this prosecution and the months-long coverup that followed, nor all the persons responsible. Thus, Defendants reiterate their request this Court to also hold a hearing to develop the full record relating to the "special factors" present here and their entitlement to full payment of their legal fees and expenses. In addition to being necessary in a Hyde Amendment context, a public hearing will also ensure that those who were involved are held to account, and to prevent and deter similar misconduct going forward. *See also* Dkt. 226 (request for hearing and attendant discovery).

The Court's need for continued involvement in this matter is necessary for multiple reasons. First, while historically this Court could likely entrust that the U.S. Attorney's Office or

6

the Department of Justice would follow through with an internal investigation and produce relevant discovery there is no longer any assurance that such a presumption of regularity exists in this Department of Justice.[4]

Second, the public statements made by U.S. Attorney Andrew Boutros regarding this case raise serious concerns about (1) the desire to investigate the serious violations committed by USAO employees in this prosecution, and (2) the DOJ's belief whether prosecutorial misconduct was actually committed in this case.

The Defendants are concerned that by simply writing a check – paid for with taxpayer dollars – the U.S. Attorney is seeking to stop any further inquiry into the clear misconduct by AUSAs and other federal officials related to this case. Allowing the government to bury what remains to be exposed of its misconduct before this Court not only offends justice in this case, it endangers all members of the community who are and remain subject to the authority of the U.S. Attorney's Office. Without full transparency and accountability, the injustices and type of misrepresentations to the Court that occurred in this case could very easily be repeated, targeting other individuals in our community. The only viable and appropriate route to accountability for the documented misconduct that occurred here (and that which is still hidden from the Court's view) is this Court ordering relevant discovery be produced and holding hearings in this matter – precisely the process the government (perhaps understandably, given the facts known to date) is desperately trying to avoid.

---

[4] This Court observed firsthand the eroding nature of this trust in the DOJ stating, "I do believe deeply in the presumption of regularity and that most government attorneys are doing the best they can to do the right thing. *That trust has been broken.*" 5-21-26 Tr. at 23:23-25.

**III.  U.S. Attorney Boutros Has Stated Publicly He Does Not Believe Misconduct Occurred, and That He Welcomes Further Investigation.**

The Defendants' concern that the payment of the attorneys' fees by the U.S. Attorney's Office will keep the truth and scope of the misconduct that occurred in this case hidden forever stems in large part from the public and private statements by U.S. Attorney Boutros regarding this case. A review of U.S. Attorney Boutros' statements makes clear that he does not believe any misconduct actually occurred and thus no meaningful investigation or accountability can be counted on from his Office.[5]

U.S. Attorney Boutros previously informed the Court that he has already investigated this matter to his satisfaction and has sincerely determined that no deliberate misconduct occurred:

> It is *my very sincere belief*, Your Honor, that no prosecutor acted intentionally in misleading you, and that there was no desire to mislead the Court and no deliberate misconduct on the part of the prosecutors.

5-21-26 Tr. at 50:17-21 (emphasis added).

While this Court might hold out hope that U.S. Attorney Boutros would change his "sincere belief" after he investigates and realizes the true extent of the deception and fraud his prosecutors committed in this matter, he has foreclosed that route by stating he has, from his perspective, already fully investigated the matter and stands by his misguided belief that no misconduct occurred.

> But I did want you to know from me, that from my assessment, ***having spoken extensively to the prosecutors***, I do not believe that whatever errors

---

[5] The agreement to stipulate that attorneys' fees are warranted while continuing to publicly deny any wrongdoing further illustrates the need for this Court to initiate further investigation into this matter. Given the parties involved include political appointees at the highest levels of both the local and national Department of Justice offices, it is clear there will be no proper or objective investigation done unless the Court directs it. This Court, therefore, is the community's only hope for pursuing transparency and accountability.

were done specifically as it relates to the redactions, were done intentionally or with a desire to mislead the Court.[6]

5-21-26 Tr. at 50:23-51:2 (emphasis added).

Perhaps the most troubling statement by U.S. Attorney Boutros regarding is the message he sent to all employees in the U.S. Attorney's Office, literally within just a few hours of leaving the courtroom where this Court made clear its severe displeasure with the misconduct that occurred in this matter, and Mr. Boutros was forced to dismisss this case with prejudice. Rather than being chastened by all that had been exposed to date, immediately thereafter the U.S. Attorney wrote an office-wide email to publicly *commend* the conduct and actions of the AUSAs at the center of this self-created storm:

> [T]oday was an important day for the Office. We saw three *courageous* prosecutors …fight long and hard for a case they inherited when a colleague departed the Office. *These prosecutors fought for the rule of law* . . . Our Prosecutors were *strong* and *courageous*.

May 21, 2026 email from U.S. Attorney Boutros to all employees at U.S. Attorney's Office (emphasis added). Thus, the public record created by U.S. Attorney Boutros regarding this case demonstrates he not only does not see or comprehend the grave misconduct committed by his prosecutors over the past nine months in directly deceiving this Court (among other things), but that he is actually sending the message to all the young (and old) prosecutors in the Office that the behavior of these prosecutors should be praised and thought of as "strong," "courageous," and having "fought for the rule of law," when exactly the opposite should have been the message delivered from the lead law enforcement official in our district. The government's general

---

[6] Notably, U.S. Attorney Boutros offered to share with the Court (and presumably the public) why he holds such a sincere belief, "And if Your Honor wants to hear more about that, I'm happy to come back and explain why that is the case." 5-21-26 Tr. at 51:3-4. We respectfully submit the Court should take him up on that offer. And to the extent the Government was sincere about this offer, perhaps they will join in this request for the Court to hold hearings on this matter.

9

agreement to write a check should not cause the Court to divest its authority to bring to light the web of misconduct that has now *only begun* to be exposed.

This goal of transparency and further investigation, moreover, is one which U.S. Attorney Boutros has publicly stated he "fully supports" because he is "confident that upon careful, unbiased consideration, [no] misconduct by the United States Attorney" will be found. *See supra* n.3 (quoting U.S. Attorney Boutros). The Court should accept this invitation from the U.S. Attorney and complete the process that is required to bring this matter to a just and public-confidence-restoring conclusion.

Respectfully submitted,

**/s/ Nancy L. DePodesta**
**/s/ Carly Alana Chocron**
Taft Stettinius & Hollister LLP
111 E Wacker Dr, Suite 2600
Chicago, IL 60601
312-836-5884
ndepodesta@taftlaw.com
cchocron@taftlaw.com
*Attorneys for Michael Rabbitt*

**/s/ Joshua G. Herman**
Law Office of Joshua G. Herman
53 W. Jackson Blvd., Suite 404
Chicago, IL 60604
312-909-0434
jherman@joshhermanlaw.com

**/s/ Molly Armour**
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
773-746-4849
armourdefender@gmail.com
*Attorneys for Katherine Marie Abughazaleh*

**/s/ Terence H. Campbell**
**/s/ Valerie Ann Davenport**
Cotsirilos, Poulos & Campbell, Ltd.
55 E. Monroe Street, Suite 3250
Chicago, IL 60603
312-263-0345
tcampbell@cotsiriloslaw.com
vdavenport@cotsiriloslaw.com
*Attorneys for Andre Martin*

**/s/ Christopher Parente**
**/s/ Damon M Cheronis**
Cheronis & Parente
140 S. Dearborn, Suite 404
Chicago, IL 60603
773-458-4899
cparente@cheronislaw.com
damon@cheronislaw.com
*Attorneys for Brian Straw*

10

**/s/ Cynthia Giacchetti**
Law Office of Cynthia Giacchetti
53 W. Jackson Blvd., Suite 1035
Chicago, Illinois 60604
(312) 939-6440
cg@cgdefense.com
*Attorney for Catherine Sharp*